667 P.2d 1345

**In the Matter of the Appeal in MARICOPA COUNTY JUVENILE ACTION NO. JS–4374.**

**No. 1 CA–JUV 196.**

Court of Appeals of Arizona, Division 1, Department C.

July 28, 1983.

---

Vincent R. Libbon, Jr., Phoenix, for appellant.

Levine & Jarvi by Richard T. Tracy, Sr., Phoenix, for appellees.

## OPINION

BROOKS, Presiding Judge.

This appeal from an order of the juvenile court terminating appellant's parental rights presents four issues for review:

1. Whether there was sufficient evidence to support a finding of abandonment as defined by A.R.S. § 8–201(1) and implemented by A.R.S. § 8–533(B)(1).

2. Whether the mother (appellant) was denied the opportunity to personally appear at the proceedings and was therefore denied her due process right to confrontation.

3. Whether the juvenile court committed reversible error in denying a motion for continuance for the purpose of presenting impeachment evidence.

4. Whether the juvenile court committed error in admitting exhibits into evidence.

After a factual overview, we will discuss each issue in turn. Initially, we observe several principles generally applicable to this review. On appeal, this court will accept the juvenile court's findings in support of termination of the parent-child relationship unless such findings are clearly erroneous. *In the Matter of Juvenile No. J–2255,* 126 Ariz. 144, 613 P.2d 304 (App. 1980); *In the Matter of Maricopa County Juvenile Action No. JS–378,* 21 Ariz.App. 202, 517 P.2d 1095 (1974). The standard of proof in a termination proceeding is by clear and convincing evidence. *Stantosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In the Matter of Maricopa County Juvenile Action No. A–26961,* 135 Ariz. 228, 660 P.2d 479 (App.1982).

The child who is the subject of this action was born on September 13, 1972. When the child was approximately four months old, appellant made arrangements to place him for adoption through a welfare agency. This was adamantly opposed by the grandparents (appellees). Appellant ultimately acquiesced and left the child with appellees for approximately eight or nine months. Subsequently, appellant married and left her parents' home with the child. In 1974, she left her first husband because he abused her and she travelled to Texas with a male companion and her child. While in Texas, she divorced her first husband. Appellant, a companion and the child then travelled to South Carolina where appellant and the companion were married. A second child was born to appellant, the son of her second husband, in South Carolina. Appellant's second husband was also prone to wife abuse and appellant left him after two years and returned to her parents' home where she remained with both children for approximately thirteen months. In the interim, she divorced her second husband.

In 1977, appellant returned to Texas with the two children and subsequently remarried for the third time. Appellant and her third husband thereafter moved to Arizona where they began a mechanic's business and rented a home.

At the hearings in this matter, appellant's brother and his wife testified regarding what they had observed in appellant's home during a two-week visit. They testified that the child involved in this case, together with his half-brother, slept in a room with no beds on a bare floor, although appellant and her husband had the use of a bed. Additionally, the son of appellant's third husband, an eighteen year-old boy living with the family at that time, also had his own room and a bed. Appellant's brother testified that the child involved in these proceedings and his half-brother were not allowed to eat with the adults nor were they fed the same foods that the adults consumed.

Appellant's third husband's business thereafter failed and the family returned to Texas.

After the return to Texas, appellant separated from her third husband, again because he was a wife beater. In December 1979, appellant requested that appellees take the child involved in this case into their home on an indefinite basis. After placing the child with appellees, appellant had no significant contact with the child. The extent of appellant's contact with the child involved approximately four phone calls, a birthday card, and a poster over a two-year period. She provided no money for food or clothing. Rather, she continued to request support from her parents for her own expenses.

After appellant's separation from her third husband in Texas, she began another relationship with an individual who is the father of a third child. In 1980, appellant's second child, the result of the union between appellant and her second husband, died. A certified report from the office of the medical examiner of Travis County, Texas was received in evidence. The report detailed the postmortem examination of the child's half-brother who died at the age of four years. The examiner concluded that the child came to his death as a result of blunt trauma to the abdomen and head and

that the death was a homicide. The report indicated that several days had elapsed between the injuries sustained by the child and the time when appellant brought him to the hospital for medical care.

Appellees, together with the child in this case, attended the funeral of the child's half-brother in Texas and this is the only time that the child has seen the appellant since she left him with appellees in 1979.

Appellant was indicted for the murder of her second child and released on bond. On August 17, 1981, appellees brought this petition to terminate the parent-child relationship in order to clear the way for the adoption of their grandson.

Appellant contested the termination and, after extensive continuances, hearings were held before the juvenile court on August 3, August 26, October 28, and November 9, 1982. Appellant was represented by counsel throughout these proceedings. Although requested to do so, appellant made no attempt to seek permission of the Texas court for relief from her bond restricting her to the State of Texas so that she might attend these severance proceedings nor did she provide any deposition testimony.

Following the hearings in this matter, the juvenile court entered an order on November 16, 1982, which found that appellant had abandoned the child and had made no effort to maintain a parental relationship. The order found that appellant had left the child without provision for support and had made only token efforts to communicate with the child for a period in excess of six months. On that basis, and applying a standard of clear and convincing evidence, the juvenile court ordered that the parent-child relationship between appellant and the child be terminated. This appeal followed.

We first consider the issue of whether sufficient evidence was presented to the juvenile court from which a finding of abandonment could be made. A.R.S. § 8–533(B)(1) provides:

B. Evidence sufficient to justify the termination of the parent-child relationship shall include any one of the following,

and in considering any of the following grounds, the court may also consider the needs of the child:

1. That the parent has abandoned the child or that the parent has made no effort to maintain a parental relationship with the child. It shall be presumed that the parent intends to abandon the child if the child has been left without any provision for support and without any communication from such parent for a period of six months or longer. If in the opinion of the court the evidence indicates that such parent has made only token efforts to support or communicate with the child, the court may declare the child abandoned by such parent.

Abandonment is also defined in A.R.S. § 8–201 which states:

In this chapter, unless the context otherwise requires:

1. "Abandoned" means the failure of the parent to provide reasonable support and to maintain regular contact with the child, including the providing of normal supervision. Failure to maintain a normal parental relationship with the child without just cause for a period of six months shall constitute prima facie evidence of abandonment.

A recent opinion of this court has also considered the definition of abandonment in the context of a termination of parent-child relationship. In *Matter of Maricopa Juvenile Action Nos. JS–4118/JD–529,* 134 Ariz. 407, 656 P.2d 1268 (1982) this court stated:

The appropriate test of abandonment is whether there has been conduct on the part of the parent which implies a conscious disregard of the obligations owed by a parent to the child, leading to the destruction of the parent-child relationship. [Citations omitted.]

At 1270.

In the case of *In the Matter of Pima County Juvenile Action No. S–624,* 126 Ariz. 488, 616 P.2d 948 (App.1980), this court recognized that the definition of abandonment must be elastic and that questions of whether an abandonment exists or was in-

tended are questions of fact for resolution by the trial court. This court held that the best interests of the child are a valid factor in deciding abandonment allegations but noted that the primary predicate for such a finding is, again, whether there has been conduct on the part of the parent which shows a conscious disregard of the obligations which are owed by a parent to a child and which lead to the destruction of the parent-child relationship. *See also, Anonymous v. Anonymous,* 25 Ariz.App. 10, 540 P.2d 741 (1975).

■ The evidence presented in this case provided ample evidence from which the trial court could determine that the conduct of appellant had constituted abandonment. Even if her conduct prior to 1979 is disregarded, it is clear that after 1979 appellant left the child essentially in the care of her parents and, with the exception of one birthday card—which we note was sent to the child after the instant litigation was begun—and a movie poster, appellant's conduct evidences no conscious effort on her part to maintain a parent-child relationship.

The facts in this case show that the child has spent as many years of his life in the home of appellees as he has in his mother's care. The record shows that he now has a stable home life and is at present doing exceedingly well in school and is among friends. Taking into consideration both the conduct of the mother and the welfare of the child, we find ample evidence in the record to support the trial judge's determination that abandonment had been shown.

We next consider the question of whether appellant was denied the opportunity to personally appear at the proceedings and was therefore not accorded her due process right to confrontation.

Initially, we note that the hearings in this case were delayed, at the request of appellant, for nearly a year while she attempted to resolve her criminal charges in Texas. Finally, the juvenile court ordered that the matter proceed. It was appellant's position that she had been released on bond on the criminal homicide indictment and that the provisions of the bond release restricted her from leaving the State of Texas. Early in the proceedings, it was pointed out both by counsel and appellees and by the juvenile court that appellant had not alleged that she sought permission for release from that restriction for the purpose of appearing at these termination proceedings.

■ We note that a parent in a termination proceeding does have the right to confront witnesses where the witnesses' testimony goes to the heart of the termination proof. *In the Matter of Maricopa County Juvenile Action No. JD–561,* 131 Ariz. 25, 638 P.2d 692 (1981). The task in this appeal is to determine whether appellant was afforded that right.

In the case of *In Re Clark,* 26 Wash.App. 832, 611 P.2d 1343 (1980), the Washington Court of Appeals considered the question of an incarcerated parent who alleged that error was committed because the trial court refused to continue proceedings until he could attend and have an opportunity to be heard. The Washington court stated:

> We find that the trial court has done everything it could in this matter. Clark had the opportunity to appear both by a *pro se* brief and through his counsel. The court was apparently of the opinion that Clark could not be brought into the state because of his incarceration in Minnesota and because of the detainer placed on him by federal probation authorities. *There is no evidence in the record that Clark made any attempts to be present at the hearing.* [Emphasis supplied]

611 P.2d at 1346.

■ Similar circumstances are presented here. Appellant alleged that her bond restrictions pertaining to the homicide indictment forbade her from leaving Texas to attend the termination proceedings in this case. However, even after it was brought to counsel's attention early in the case, the record contains no evidence of any attempt by appellant to request permission from Texas authorities to be allowed to come to Arizona to attend the termination proceedings. In the absence of such a showing, it cannot be said that appellant has shown

that she was restricted from participating in these proceedings and did not have an opportunity to appear. Like the Washington court, quoted above, we find that the juvenile court in this case did all that it could in this matter, including granting extensive continuances and continuing the hearings in this matter from August of 1981 through September of 1982.

Finally, we find no merit in the assertion made in memorandum accompanying the notice of appeal that the juvenile court judge had agreed to allow thirty-five to forty days after the final hearing for the mother to appear. Our review of the record shows that this statement of the juvenile court judge was made earlier in the proceedings and we do not find any implication therein that the court agreed to continue the proceedings yet another month beyond the final hearing. In fact, following this particular statement of the judge, proceedings were continued from August to October, a period encompassing the time complained of.

■ We turn to appellant's contention that reversible error occurred when the trial judge refused, on the final day of testimony, to grant a continuance so that appellant's brother could be brought from California to provide impeachment evidence. First, this brother had already testified at the hearing and the record read as a whole shows that the additional testimony with which counsel was concerned was known to him prior to the brother's testifying. It involved accusations made by appellant in a letter to counsel which was not admitted into evidence but which counsel used extensively in cross-examining appellees. There has been no showing why questions involving information supplied by appellant could not have been used during the examination of the brother while he was on the stand. Additionally, counsel for appellant failed to subpoena appellant's brother and allowed him to return to California from Arizona, then requested the court to grant a continuance so that counsel could attempt to bring the brother back from California to testify again. In our opinion, the juvenile court would have been justified in viewing this as merely a vehicle for delay. Appellant had consistently attempted to delay these proceedings by seeking continuances and by failing to request permission to attend the proceedings in person. The denial of counsel's motion to recall appellant's brother after all the testimony had been taken was not an abuse of discretion.

■ The final argument made in this appeal is that the juvenile court erred in admitting into evidence a certified copy of the report of the medical examiner of Travis County, Texas, concerning the death of appellant's second child. We have examined the order in this case and find that the trial court's determination of abandonment was not based solely, or even in any material respect, on this report. *Cf. In Re Appeal in Maricopa County Juvenile Action No. J–75482,* 111 Ariz. 588, 536 P.2d 197 (1975). Further, the report was relevant to the issue of the welfare of the child involved in this case inasmuch as it shows, by certified record, that appellant's second child died of injuries sustained while in the mother's care, a fact which has not been contested. We have examined the memorandum in support of the notice of appeal and find that the exhibit was one of only two exhibits objected to in the memorandum supporting the notice of appeal. The other exhibit, a social worker's report, containing information about the placement of appellant's third child was not admitted into evidence.

For the foregoing reasons, the judgment of the juvenile court terminating appellant's parental rights is affirmed.

JACOBSON and CORCORAN, JJ., concur.