NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

BARBARA A., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, J.W., *Appellees.*

No. 1 CA-JV 15-0313
FILED 3-1-2016

Appeal from the Superior Court in Maricopa County
No. JD23541
The Honorable Lisa Daniel Flores, Judge

**AFFIRMED**

COUNSEL

Robert D. Rosanelli Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellee DCS*

---

## MEMORANDUM DECISION

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Patricia A. Orozco joined.

---

J O N E S, Judge:

¶1 Barbara A. (Mother) appeals the juvenile court's order terminating her parental rights to J.W. (Child) arguing the Department of Child Safety (DCS) failed to prove the statutory grounds for severance by clear and convincing evidence. For the following reasons, we affirm.

## FACTS[1] AND PROCEDURAL HISTORY

¶2 In March 2013, DCS received a report that Mother regularly hit Child's older siblings, ages sixteen, fourteen, and nine, with a coat hanger as a form of discipline. Subsequent investigation also revealed Child, then age seven, had severe developmental delays, did not speak, and was not toilet-trained. He often arrived at school in a dirty diaper "reeking of body odor, dirt, and urine," requiring the school to give him "informal baby wipe baths" and wash his clothing. Although Child had an individual education plan (IEP) in place at his school and had previously received services from the Department of Developmental Disabilities, Mother did not attend IEP meetings and did not follow through with seeking services to diagnose or address his special needs. In the home, Mother relied upon the older children to care for Child, which included changing his diaper and using physical discipline, while she worked long hours. Additionally, Mother admitted a history of marijuana, alcohol, and pain medication abuse.

¶3 All four children were removed from Mother's care, and DCS filed a petition alleging they were dependent as to Mother on the grounds of abuse, neglect, and substance abuse. Mother admitted she needed help with parenting and substance abuse and was immediately offered

---

[1] We view the facts in the light most favorable to upholding the juvenile court's order. *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010) (citing *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207, ¶ 2 (App. 2008)).

substance abuse testing and treatment, supervised visitation, individual counseling to address anger management and domestic violence, and a psychological consultation. From the time Child was removed in April 2013 through August 2013, Mother participated in only four of eight required drug tests, which were negative for any illegal substances, and, as a result, no substance abuse treatment was recommended.

¶4 In July 2013, Mother completed a psychological evaluation. Dr. Novi reported Mother had difficulty comprehending the basic needs of her children and the special needs of Child, and she did not understand why it was inappropriate to "turn[] over the raising of her younger children to her teenage daughter." He stated Mother's Multiphasic Personality Inventory indicated "a personality type that employs denial as a preferred defense mechanism;" therefore, he concluded the alleged inappropriate behaviors likely happened more often than she would admit. Dr. Novi noted counseling and parenting classes would "help," but that Mother "ha[s] and will continue to have considerable difficulty in caring for a disabled child's needs." Mother began individual counseling but denied any history of substance abuse or neglect of the children. She stopped attending after a few weeks and discontinued the service completely in December 2013.

¶5 In September 2013, Mother submitted to the dependency, and the juvenile court adjudicated Child dependent as to Mother and adopted a case plan of family reunification. Between September 2013 and May 2014, Mother participated in only five of forty-two required urinalysis tests. She tested positive for some combination of marijuana, cocaine, amphetamines, and alcohol each time.

¶6 In December 2013, Mother underwent a second psychological evaluation. After interviewing Mother, Dr. Silberman determined Mother suffered from substance abuse and likely suffered from posttraumatic stress related to childhood abuse and a personality disorder with antisocial, narcissistic, and paranoid traits. Dr. Silberman also reported Mother did not have the ability "emotionally" to meet the needs of a special needs child, and, so long as she continued to deny substance abuse and parenting deficiencies and refuse to participate in drug testing and counseling, her prognosis to become a minimally adequate parent was poor. Mother was again referred for a substance abuse assessment that same month but did not complete the intake appointment until April 2014. Mother was recommended to participate in the standard outpatient program, but she did not attend. Both the substance abuse testing and treatment services were closed for lack of participation.

¶7         Also in December 2013, Mother was referred for parent aide services. After cancelling one appointment and failing to present for a second, the intake was completed. Mother's goals included learning age-appropriate parenting skills and discipline as well as understanding the harmful effects of domestic violence, substance abuse, and unresolved mental health issues on members of her household. However, the service was closed for lack of participation in July 2014 after Mother missed twenty out of thirty-one visits with Child, ten out of nineteen one-on-one sessions with the parent aide, and did not achieve any of her behavioral goals. Mother was again referred for individual counseling in April 2014 and began attending sporadically.

¶8         In May 2014, the case plan for Child was changed to severance and adoption. DCS filed a motion to terminate the parent-child relationship, alleging severance was warranted because Mother: (1) substantially neglected or willfully refused to remedy the circumstances that caused Child to be in an out-of-home placement for a period of nine months or longer, and (2) Mother was unable to discharge her parental responsibilities because of a history of chronic abuse of dangerous drugs, controlled substances, or alcohol. *See* Ariz. Rev. Stat. (A.R.S.) § 8-533(B)(3),[2] (8)(a). That summer, DCS submitted another referral for substance abuse testing and a third referral for substance abuse treatment. Mother participated in two of five required tests in June 2014; both times she tested positive for marijuana. She did not participate in another required test until September 2014 and again tested positive for marijuana. She missed three required tests in October 2014, and the service was closed, again, for lack of participation. Meanwhile, Mother was assessed with cannabis abuse after she admitted to physically abusing her children while under the influence of marijuana and was again recommended to participate in standard outpatient substance abuse treatment. Although Child had been out of Mother's care for twenty months, the treatment provider noted Mother was resistant to treatment, failed to follow through with appointments, and lacked the motivation to make the required behavioral changes.

¶9         In November 2014, visitation-only parent aide services were initiated. The parent aide reported Mother behaved appropriately at the visits and displayed a bond with Child. Mother also enrolled herself in a different substance abuse treatment program but at intake only disclosed prior alcohol use, did not admit to any use of illegal drugs, and denied that her use of substances affected her children. Her attendance was

_____

[2]        Absent material changes from the relevant date, we cite a statute's current version.

inconsistent, and she had yet to complete this program by the time of trial. In December 2014, Mother missed six of eight required tests. Of the two tests she completed, Mother tested positive for cocaine once and marijuana both times.

¶10     In December 2014, Mother had yet to reach the treatment goals of her counseling despite receiving two extensions of the service, and her substance abuse treatment services were suspended as a result of an "altercation." DCS amended its petition to include, as grounds for severance, that Mother had been unable to remedy the circumstances that caused Child to be in an out-of-home placement for a period of fifteen months or longer, and there was a substantial likelihood she would be unable to exercise proper and effective parental care and control in the near future. *See* A.R.S. § 8-533(B)(8)(c).

¶11     At trial, Mother maintained the dependency was initiated only because her teenage daughter filed a false report of abuse after they had an argument. She denied paying her daughter to watch Child while she worked until 11:00 p.m., admitted "there's no way [her daughter] could have cared for her brother," and denied she or her other children had neglected or abused Child in any manner.

¶12     Mother also testified she was self-employed as a music producer and also "d[id] hair on the side." She stated she used marijuana for medicinal purposes and obtained a medical marijuana card in April 2014. She admitted using methamphetamine and alcohol after Child was removed but denied voluntarily using cocaine, surmising the substance must have been laced in the "street marijuana," which she purchased illegally. Mother denied she had a substance abuse problem, but admitted she missed two substance abuse tests because she did not have transportation and missed many others because she forgot or was busy at work. Mother's neighbor and adult goddaughter testified they observed her to be an appropriate parent.

¶13     The DCS caseworker testified regarding Mother's participation in services, noting the only services Mother had completed in more than two years were a psychological evaluation and a hair follicle test immediately after the children were removed. She expressed concern with Mother's ability to parent a special needs child and follow up on Child's appointments and services, given her inability to complete her own recommended services and failure to acknowledge and address her substance abuse. Indeed, Mother had to be referred for substance abuse testing nine times because the service was repeatedly closed out for lack of

participation, and by the time of trial, she had yet to complete a substance abuse treatment program.

¶14        Evidence was presented that Child was in a safe, stable, and loving home that was meeting his medical, developmental, and educational needs.   As a result, Child had progressed significantly since he was removed from Mother's care.  The DCS caseworker testified severance was in Child's best interests because Mother had not made behavioral changes necessary to demonstrate her ability to parent.  Additionally, Child was adoptable and his placement was willing to adopt Child and ensure Child remained in contact with his siblings.

¶15        After taking the matter under advisement, the juvenile court entered an order finding DCS had proven by clear and convincing evidence that termination of Mother's parental rights was warranted given her failure to remedy the circumstances causing Child to be placed in out-of-home care pursuant to A.R.S. § 8-533(B)(8)(c) and declining to rule on the other grounds alleged.  The court also found that severance was in Child's best interests and entered an order terminating Mother's parental rights.[3] Mother timely appealed.

**DISCUSSION**

¶16        As relevant here, in order to terminate a person's parental rights, DCS must prove by clear and convincing evidence that it made diligent efforts to provide reunification services, and:

> The child has been in an out-of-home placement for a cumulative total period of fifteen months or longer . . . the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement and there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future.

A.R.S. § 8-533(B)(8)(c); *see also* Ariz. R.P. Juv. Ct. 66(C).[4]  Mother does not dispute Child's length of time in care or the diligence of DCS's efforts to

---

[3]        Child's father's parental rights were also severed, but he does not contest this order and is not a party to this appeal.

[4]        The juvenile court must also find by a preponderance of the evidence that severance is in the child's best interests, A.R.S. § 8-533(B); *Kent K. v.*

provide services, but argues DCS failed to prove by clear and convincing evidence either that she is currently unable to parent or is incapable of parenting in the near future. In advancing this argument, Mother relies upon her self-reported sobriety, recent increased participation in services, and explanations for her past behavior to demonstrate she is presently able to parent Child.

¶17 However, the juvenile court specifically found Mother was unable to meet the needs of a child with serious special needs and was unlikely to be able to do so in the future because she never addressed her substance abuse problem and had yet to gain any understanding of how to parent a special needs child. These findings are supported by the record, which reflects Mother was offered numerous referrals for services over the course of nearly two years that were specifically designed to address the impediments to reunification — Mother's substance abuse and inability to parent a child with special needs. Despite DCS's diligent efforts, Mother did not test consistently, was not truthful with treatment providers regarding her substance use, and never completed any substance abuse treatment program. She tested positive for cocaine and marijuana in the month immediately preceding the beginning of trial. Although she eventually obtained an authorization to use marijuana for medical purposes, she did not complete individual counseling and did not demonstrate she was able to successfully parent Child while using marijuana. Regarding the concerns with her parenting, Mother's failure to participate in parent aide services prevented her from learning to care for and appropriately discipline a developmentally delayed child. And, Mother's apparent inability to keep her own appointments and complete the services necessary to demonstrate appropriate parenting skills reflects poorly on her ability to obtain and follow through with needed services for Child.

¶18 We do not reweigh the evidence on appeal; as the trier of fact, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004) (citing *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002)). Accordingly, we will affirm a termination order "unless there is no reasonable evidence to support" the court's factual findings. *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 2 (App. 1998) (citing *Maricopa Cnty. Juv. Action No. JS-4374*, 137 Ariz. 19, 21 (App. 1983), and *Maricopa*

*Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005), but Mother does not argue insufficient evidence supports this finding.

*Cnty. Juv. Action No. JS-378*, 21 Ariz. App. 202, 204 (1974)).  Here, reasonable evidence supports the court's determination that Mother was presently unable to parent Child and would not be capable of parenting Child appropriately in the near future.

## CONCLUSION

¶19        The juvenile court's order terminating Mother's parental rights to Child is affirmed.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama