NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JUANA C., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, J.C., *Appellee*.

No. 1 CA-JV 18-0317
FILED 2-21-2019

Appeal from the Superior Court in Maricopa County
No. JD20142
The Honorable Sara J. Agne, Judge

**AFFIRMED**

COUNSEL

Law Office of H. Clark Jones, L.L.C., Mesa
By H. Clark Jones
*Counsel for Plaintiff/Appellant*

Arizona Attorney General's Office, Tucson
By Cathleen E. Fuller
*Counsel for Appellee Department of Child Safety*

_____

**MEMORANDUM DECISION**

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Chief Judge Samuel A. Thumma joined.

_____

**J O N E S**, Judge:

¶1      Juana C. (Mother) appeals the juvenile court's order terminating her parental rights to J.C. (Child), arguing the Department of Child Safety (DCS) failed to prove by clear and convincing evidence that it made diligent efforts to provide appropriate reunification services and failed to prove termination was in Child's best interests by a preponderance of the evidence.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2      Child was born with a rare genetic condition characterized by developmental delays, facial anomalies, and abnormal muscle tone.[1]  At four years old, Child cannot walk, bathe, or feed himself unassisted, and is largely nonverbal.  Child receives occupational and physical therapy, takes speech and feeding classes, and requires special equipment to help with mobility and the strengthening of his back and legs.

¶3      In April 2015, Mother left then-one-year-old Child at home alone while she walked a half-mile with three-year-old A.S. to pick up six-year-old B.S. and seven-year-old H.S. (collectively, the Siblings) from their school.  When Mother returned home, she was arrested on an outstanding warrant for failing to appear for court on charges of child abuse against B.S.  Mother was released the next day and ordered not to have any contact with minors.  DCS removed all four children from Mother's care and filed a petition alleging they were dependent as to Mother on the grounds of

_____

[1]      "[W]e view the evidence and reasonable inferences to be drawn from it in the light most favorable to sustaining the court's decision."  *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (citing *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 13 (App. 2002)).

neglect.[2] The children were adjudicated dependent as to Mother in October 2015, and the juvenile court adopted a case plan of family reunification with a concurrent case plan for Child of severance and adoption.

¶4 Mother was released from jail in February 2016 and, after being deported, immediately returned to the United States on a work permit. In June 2016, DCS referred Mother for parent aide services, supervised visitation, parenting classes, a psychological evaluation, and domestic violence counseling. She was also provided a nutritional coach and parent partner, given information regarding community resources, and offered transportation assistance as needed. She engaged in services, obtained full-time employment, and secured appropriate housing.

¶5 The Siblings returned to Mother's care full-time in July 2017, but Mother's visits with Child remained supervised as she struggled to understand his diagnoses, prognosis, and special needs nearly two years after his removal from her care. In August, DCS provided an additional parent aide to work one-on-one with Mother to help her better understand Child's needs and arranged transportation for Mother to attend Child's therapeutic services each week as an opportunity to learn about his physical, educational, and occupational needs. Mother attended only a few appointments, and when DCS offered to facilitate additional contact and visits through an approved safety monitor, Mother declined.

¶6 Around this same time, Mother completed a developmental assessment, which reflected borderline intellectual functioning with a guarded prognosis of improvement. As a result, Mother "literally . . . cannot understand and comprehend [Child's] difficulties." Thus, the psychologist expressed concern regarding Mother's ability to understand and incorporate the skills needed to safely parent a special needs child and noted that Child would be at risk for neglect if she failed to do so. DCS referred Mother for additional counseling, at the psychologist's recommendation, to address her history of past trauma and learn more about Child's needs.

¶7 Even with these additional services and regular discussions with DCS and Child's medical and care providers, Mother continued to misstate Child's diagnosis, question "what is wrong with [Child]," and ask when she could expect him to "be normal." In October 2017, the juvenile

---

[2] DCS also alleged the children were dependent as to their fathers, whose parental rights were terminated in March 2017 and August 2018. Neither these fathers, nor the Siblings, are parties to this appeal.

court granted DCS's request to change the case plan for Child to severance and adoption. DCS immediately moved to terminate Mother's parental rights based upon her failure to remedy the circumstances causing Child to be in an out-of-home placement for fifteen months. Shortly thereafter, the parent aide confirmed Mother had yet to demonstrate she could safely and consistently care for and supervise Child and closed the service as unsuccessful.

¶8        DCS submitted a third referral for parent aide services in early 2018. Mother was assigned two parent aides to provide guidance during visits and two to teach parenting skills, along with a Spanish interpreter. The aides incorporated Child's physical, occupational, and speech therapies into Mother's routine to help her better understand his needs. Mother participated in the sessions but did not ask questions. She did not retain information from day to day and had to be prompted to change Child's diaper during the visit.

¶9        At the contested severance hearing in June 2018, the DCS caseworker expressed continued concern regarding Mother's inability to recognize and meet Child's special needs and failure to fully engage in his care by attending his appointments and therapies or educating herself on his conditions. A parent aide testified she knew of Mother's cognitive difficulties, and repeated directions and slowed her pace to accommodate Mother's level of functioning. Based upon her observations however, the aide agreed Mother had not made any progress toward understanding Child's medical and emotional needs or developing the necessary skills to independently meet them. The psychologist opined that, in light of Mother's borderline intellectual functioning, she "would need an extensive amount of time and lots of supports . . . [d]efinitely more than a year" to properly parent Child, who had already been in out-of-home care for more than three years and, in the meantime, remained at risk for neglect.

¶10        Mother testified she loved Child and was willing to learn how to care for him. The DCS caseworker confirmed the placement was meeting Child's needs, was willing and able to adopt Child, and that Child was otherwise adoptable.

¶11        After taking the matter under advisement, the juvenile court found DCS had proved by clear and convincing evidence that it had made diligent efforts to provide appropriate reunification services but termination of Mother's parental rights was warranted because she had been unable to remedy the circumstances causing Child to be in an out-of-home placement for longer than fifteen months. *See* Ariz. Rev. Stat. (A.R.S.)

§ 8-533(B)(8)(c).[3]   The court also found severance was in Child's best interests and entered an order terminating Mother's parental rights. Mother timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1), and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

**¶12**      A parent's rights may be terminated if the juvenile court finds by clear and convincing evidence that: (1) the child has been in out-of-home care for fifteen months or longer; (2) DCS has made diligent efforts to provide appropriate reunification services to the parent; (3) "[t]he parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement;" and (4) "there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future."   A.R.S. § 8-533(B)(8)(c); *Jordan C.*, 223 Ariz. at 93, ¶ 17.   The court must also find by a preponderance of the evidence that termination of the parent-child relationship is in the child's best interests.   Ariz. R.P. Juv. Ct. 66(C); *Alma S. v. DCS*, 245 Ariz. 146, 149-50, ¶ 8 (2018) (citing *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005)).   We will affirm a termination order "unless there is no reasonable evidence to support" the court's factual findings.   *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 2 (App. 1998) (citing *Maricopa Cty. Juv. Action No. JS-4374*, 137 Ariz. 19, 21 (App. 1983), and *Maricopa Cty. Juv. Action No. JS-378*, 21 Ariz. App. 202, 204 (1974)).

## I.     DCS Made Diligent Efforts to Provide Mother with Appropriate Reunification Services.

**¶13**      Mother does not dispute the time Child has been in out-of-home care or the juvenile court's finding that she is presently unable to care for him; she argues only that the court erred in finding clear and convincing evidence that DCS made diligent efforts to provide her with rehabilitative services and that continuing such efforts would have been futile.   DCS makes diligent efforts when it provides a parent with "the time and opportunity to participate in programs designed to help her become an effective parent."   *Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994).   DCS is not, however, required to provide "every conceivable

---

[3]      Absent material changes from the relevant date, we cite the current version of rules and statutes.

service," or ensure a parent's participation or successful completion of the services. *Id.*

¶14  Mother argues the parent aide services were inadequate because the assigned parent aides did not have any specific skills or training in assisting parents with cognitive delays and employed a "hands-off approach" that was inappropriate for her needs. But we do not reweigh evidence on appeal; as the trier of fact, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004) (citing *Jesus M.*, 203 Ariz. at 280, ¶ 4). The court here specifically considered Mother's arguments regarding purported deficiencies in the parent aide service but nonetheless found DCS had been diligent in providing Mother with the best available parent aide services. We will not second-guess the court's assessment of the circumstances. Reasonable evidence supports its conclusion that DCS made diligent efforts to provide reunification services, and we find no error.

## II. Termination of Mother's Parental Rights is in Child's Best Interests.

¶15  Mother argues the juvenile court abused its discretion in finding termination of her parental rights was in Child's best interests. Mother argues Child would neither benefit from severance nor suffer from continuing the relationship with her because she loves Child and is willing to care for him "if she were taught the skills necessary to help [him]."

¶16  The existence of a bond with the parent, "although a factor to consider, is not dispositive in addressing best interests." *Dominique M. v. DCS*, 240 Ariz. 96, 98, ¶ 12 (App. 2016) (citing *Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 351, ¶ 30 (App. 2013)). Rather, the juvenile court must consider all relevant facts and determine, on a case-by-case basis, whether a preponderance of the evidence supports a finding that the child "would derive an affirmative benefit from termination or incur a detriment by continuing in the relationship." *Oscar O.*, 209 Ariz. at 334, ¶ 6 (citations omitted); *accord Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 16 (2016). The benefit to the child, particularly when severance is sought based upon the length of time in an out-of-home placement, is the opportunity for permanency in lieu of remaining indefinitely in a situation where "parents maintain parental rights but refuse to assume parental responsibilities." *Oscar O.*, 209 Ariz. at 337, ¶ 16 (quoting *Maricopa Cty. Juv. Action No. JS-6520*, 157 Ariz. 238, 243 (App. 1988)). The court may also consider whether the presence of a statutory ground for severance will have a negative effect

upon the child. *Bennigno R.*, 233 Ariz. at 350, ¶ 23 (quoting *Maricopa Cty. Juv. Action No. JS-6831*, 155 Ariz. 556, 559 (App. 1988)).

¶17        The juvenile court here found Child had been in out-of-home care for more than three years. Despite this lengthy period, Mother had "not yet learned enough about his condition to meet his daily needs," and in fact was unable to understand his condition and needs, thus subjecting him to a risk of neglect if he were returned to her care. The court noted it was not in Child's best interests to leave the window of opportunity for remediation open indefinitely, and, "unfortunately, the time allowable for Mother's learning . . . has passed." Meanwhile, Child was adoptable and in an adoptive placement willing and able to meet his special needs. The record supports these findings and provides an adequate basis for the court's resolution of the evidence in favor of Child's interest in safety and permanence. Accordingly, we find no abuse of discretion.

## CONCLUSION

¶18        The juvenile court's order terminating Mother's parental rights to Child is affirmed.

