NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

RICHARD M., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, T.M., *Appellees*.

No. 1 CA-JV 18-0395
FILED 5-2-2019

Appeal from the Superior Court in Maricopa County
No. JD33675
The Honorable M. Scott McCoy, Judge

**AFFIRMED**

COUNSEL

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Toni M. Valadez
*Counsel for Appellee Department of Child Safety*

_____

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge Kenton D. Jones joined.

_____

**W I N T H R O P**, Judge:

¶1            Richard Patrick McCann, II ("Father") appeals the juvenile court's severance of his parental rights to his infant child, T.M.  Father challenges only the court's best-interests findings.  Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2            At the time of her birth in September 2016, T.M. tested positive for methamphetamine, amphetamine, and opioids.  The Department of Child Safety ("DCS") initiated an investigation of T.M.'s parents.  Upon submitting to urinalysis, Father tested positive for methamphetamine; accordingly, DCS took temporary custody of T.M. upon the newborn's release from the hospital.

¶3            DCS initiated a dependency case and offered Father several services in order to help him regain permanent custody of T.M.  Over the following year, Father tested positive for methamphetamine use multiple times, he missed several ordered urinalysis tests, and he closed out unsuccessfully from substance abuse treatment on four separate occasions and from parent-aide services once.  Father's failure to complete any services and repetitive positive urinalysis tests resulted in DCS again temporarily removing T.M. from the home in November 2016, in January 2017, and for the last time in February 2017, at which point T.M. was placed in foster care.

¶4            Thereafter, Father violated his terms of probation from a 2013 conviction for possession or use of a dangerous drug.  As a result, Father was sentenced in October 2017 to serve two years' imprisonment at the Arizona Department of Corrections, where he remained as of the filing date of this appeal.

¶5            A contested severance hearing was set for August 22, 2018.  The following month, the juvenile court ordered that Father's parental

rights to T.M. be severed.[1]  The juvenile court found that DCS proved by clear and convincing evidence that Father was unable to discharge his parental duties because of his history of chronic drug abuse, Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(3), despite DCS' reasonable efforts to provide appropriate rehabilitative services; and that T.M. had resided in an out-of-home placement for fifteen months or greater, that Father was unable to remedy the circumstances leading to the placement, and that it was substantially unlikely that he would be able to properly and effectively parent T.M. in the near future, *id.* at (B)(8)(c).  The court further found by a preponderance of the evidence that severance of Father's parental rights was in T.M.'s best interests.  *Id.* at (B).

**¶6**　　　　Father timely appealed.  We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 8-235, 12-120.21(A)(1), and -2101(A)(1).

## ANALYSIS

**¶7**　　　　Father challenges only the juvenile court's best-interests findings.  In his opening brief, Father argues that the court failed to "explain sufficiently how maintaining Father's parental rights would be a detriment to the child currently or in the future."[2]

**¶8**　　　　The juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009).  Accordingly, absent clear error, we accept the juvenile court's findings. *Maricopa Cty. Juvenile Action No. JS-4374*, 137 Ariz. 19, 21 (App. 1983).

---

[1]　　　　The court also severed the rights of T.M.'s mother.  The mother's attorney filed an affidavit avowing they had "reviewed the entire record on appeal and [found] no non-frivolous issue to raise."  Ariz. R.P. Juv. Ct. 106(G).

[2]　　　　This argument is wholly at odds with the previous paragraph in Father's opening brief, where he concedes that the juvenile court's order "addressed benefits to [T.M.] from a termination such as a plan for adoption" and "addressed whether maintaining the parent-child relationship would be detrimental to [T.M.]"

¶9            In addition to finding adequate statutory grounds for severance of parental rights, the juvenile court "shall also consider the best interests of the child." A.R.S. § 8-533(B). "[T]ermination is in the child's best interests if *either*: (1) the child will benefit from severance; *or* (2) the child will be harmed if severance is denied." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150, ¶ 13 (2018) (emphasis added) (citation omitted). The court must look to the totality of the circumstances in making its determination. *Id.* at 150-51, ¶ 13 (citation omitted). The best-interests test is notably disjunctive; therefore, even if Father's argument was true—that the court inadequately explained how severance would be detrimental to T.M.—the court's explicit determination that T.M. would benefit from severance of Father's rights would nevertheless be sufficient.

¶10           Here, the juvenile court addressed both benefit and detriment in its order, finding:

> Termination of the relationship [with Father] would benefit [T.M.] because it would further the plan of adoption, which would provide [T.M.] with permanency and stability. Continuation of the parent-child relationship would also be detrimental to [T.M.] because it would delay permanency, requiring [T.M.] to linger in care for an indeterminate period since [T.M.] does not have parents who are able to care for her.

The court further identified T.M.'s adoptability, and specifically noted the existence of paternal relatives in Washington state with whom DCS intended to place T.M., and about whom "[p]reliminary reports are that [such placement] is approved." Even absent successful placement with T.M.'s paternal relatives, the DCS case manager testified that T.M.'s current foster placement is willing to adopt.

¶11           The court's order further reflects that, in considering the totality of the circumstances, the court also weighed:

- Father's long history of abusing methamphetamine, heroin, and opiates;

- Father's several prior criminal charges, each of which was drug-related;

- Father's violation of the terms of his probation which led to his current term of incarceration;

- Father's failure to complete substance abuse treatment each of the four times he was referred by DCS between September 2016 and August 2017;

- Father's repeated failure to comply with urinalysis testing;

- Father's failure to participate in or achieve the objectives of parent-aide services resulting in his unsuccessful discharge; and

- As the cumulative result of all of this, Father's inability "to discharge parental responsibilities."

¶12 In light of these factors, we hold that the juvenile court properly addressed the best interests of T.M. As importantly, the record more than adequately supports the court's best-interests finding.

## CONCLUSION

¶13 Finding no error, we affirm the decision of the juvenile court.

