NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

VICTORIA G., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, K.G., K.G., *Appellees.*

No. 1 CA-JV 15-0365
FILED 5-3-2016

---

Appeal from the Superior Court in Maricopa County
No. JD527236
The Honorable Karen L. O'Connor, Judge

**AFFIRMED**

---

COUNSEL

Czop Law Firm PLLC, Higley
By Steven Czop
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Amber E. Pershon
*Counsel for Appellee DCS*

---

**MEMORANDUM DECISION**

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Patricia A. Orozco joined.

---

**J O N E S**, Judge:

**¶1**        Victoria G. (Mother) appeals the juvenile court's order terminating her parental rights to K.G. (Older Sister) and K.G. (Younger Sister) (collectively, the Children),[1] arguing the Department of Child Safety (DCS) failed to prove: (1) the statutory grounds for severance by clear and convincing evidence, and (2) that severance was in Older Sister's best interests by a preponderance of the evidence.  For the following reasons, we affirm.

**FACTS[2] AND PROCEDURAL HISTORY**

**¶2**        Mother began using alcohol and marijuana at age nine, non-prescribed opioids at eighteen, and methamphetamine in her early twenties.  She continued her marijuana, opioid, and methamphetamine use for almost thirty years, and also "experimented" with cocaine for five years in her early twenties.  She used marijuana while pregnant with Younger Sister in 2004, and the Children's half-brother was born substance-exposed to marijuana in April 2011; at that same time, Mother tested positive for marijuana and opiates.  In September 2013, a decade of concerns regarding Mother's substance abuse led to an in-home dependency for the Children, then ages eight and nine, and their half-brother.

---

[1]        Both Children share the same initials.  For purposes of this decision, we differentiate them as Older Sister and Younger Sister to preserve their anonymity.

[2]        We view the facts in the light most favorable to upholding the juvenile court's order terminating parental rights.  *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010) (citing *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207, ¶ 2 (App. 2008)).

¶3 The in-home dependency was unsuccessful. Although Mother obtained a medical marijuana card in October 2013, she did not attend substance abuse treatment consistently and was not truthful about her use of marijuana and prescription drugs. She also admitted smoking methamphetamine in her home during the Thanksgiving weekend while the Children were present and ignored DCS's instruction not to allow her boyfriend to live in a shed beside her home because the Children, past victims of sexual abuse, were vulnerable to exploitation and the boyfriend did not pass a background check. As a result, the Children were removed in December 2013,[3] and DCS filed a petition alleging they were dependent as to Mother on the grounds of substance abuse, neglect, sexual abuse, and mental health. Mother contested the dependency but submitted the issue to the juvenile court on the record. The court adjudicated the Children dependent as to Mother and adopted a case plan of family reunification concurrent with severance and adoption.[4]

¶4 DCS referred Mother for services designed to reunify the family, including substance abuse treatment and testing, drug court, trauma therapy, parent aide services, supervised visitation, and a psychological evaluation. Both Children exhibited signs of trauma resulting from past abuse and neglect and were also referred for therapy.

¶5 Mother was unable to participate in services for several months after she contracted MRSA in December 2013 and again in February 2014. In March 2014, Mother was pulled over for running a stoplight, and a blood sample obtained during the subsequent DUI investigation tested positive for methamphetamine. Mother also missed several required urinalysis tests in March 2014 and tested positive for methamphetamine two additional times in March and April. All tests were positive for marijuana at levels inconsistent with that specified on her card.

¶6 By May 2014, Mother was attending drug court once per week, intensive outpatient substance abuse treatment four times per week, and supervised visits with the Children once per week. She was also engaged in individual trauma therapy and mental health services,

---

[3] The Children's two-year-old half-brother was also removed and found dependent as to both parents. He was placed with his father, and the dependency was dismissed as to him in September 2014.

[4] The Children were also adjudicated dependent as to their father, whose whereabouts were unknown. His parental rights were terminated in November 2015. He did not appeal and is not a party to this appeal.

including group therapy, medication management and monitoring, crisis stabilization, hospitalization referrals as needed, and high-needs case management. Despite these intense services, Mother admitted struggling to maintain sobriety and address her mental health issues. And, although she was obtaining and using marijuana legally, she admitted marijuana caused her to have psychosocial behaviors, experience mood disorders, and put others in danger. She completed an intake for inpatient substance abuse treatment in June 2014 and was scheduled to be admitted in August 2014. In the interim, she stopped attending outpatient substance abuse treatment consistently, missed several required urinalysis tests, and missed four visits with the Children.

¶7            Mother participated in a psychological evaluation in July 2014 and was diagnosed with bipolar disorder, post-traumatic stress disorder, severe stimulant use disorder, cannabis use disorder, opioid use disorder, and alcohol use disorder. The psychologist rated her prognosis to demonstrate minimally adequate parenting skills in the foreseeable future as fair but "highly dependent on achieving psychiatric stability and refraining from illicit substance use," including marijuana. He recommended Mother participate in individual and family therapy and support groups and continue substance abuse treatment and testing. DCS did not submit separate referrals for these services because Mother was already engaged in trauma therapy and mental health services, and family therapy was available through the Children's therapy service provider.

¶8            Mother continued to have weekly visits with the Children until September 2014, when visitation was suspended while DCS and police investigated reports that Younger Sister was sexually abused by Mother while in her care. After the investigation was completed, Younger Sister continued to disclose past instances of abuse, and her therapist recommended she not participate in visits with Mother or Older Sister while she processed the trauma. Mother thereafter resumed weekly supervised visitation with Older Sister only.

¶9            Mother completed a forty-five day inpatient substance abuse treatment program in October 2014, which also included instruction in anger management, domestic violence, positive parenting, and cultural arts. She was advised she needed to re-engage in outpatient substance abuse treatment and urinalysis testing, drug court, trauma therapy, parent aide services, and mental health services. Despite obtaining these services, Mother did not refrain from using illegal substances. Although she called in to the urinalysis testing center, she did not show up for any of the required tests after September 2014. The service was closed as unsuccessful

in January 2015.  Between October and December 2014, Mother participated in six of eleven required tests through the substance abuse treatment provider.  She tested positive for marijuana in October and November, and methamphetamine in December — a year after the Children were removed from her care.

¶10          In February 2015, DCS moved to change the case plan to severance and adoption, noting that although Mother completed many of the recommended services, she had yet to demonstrate she could remain drug-free or fully address her mental health issues.  The motion was granted over Mother's objection.  DCS immediately filed a motion to terminate the parent-child relationship, alleging severance was warranted on the grounds that (1) Mother was unable to discharge her parental responsibilities because of a history of chronic abuse of dangerous drugs, controlled substances, and/or alcohol and there were reasonable grounds to believe the condition would continue for a prolonged indeterminate period, A.R.S. § 8-533(B)(3); and (2) Mother had been unable to remedy the circumstances causing the Children to be in an out-of-home placement for fifteen months or longer, A.R.S. § 8-533(B)(8)(c).

¶11          Although Mother completed twenty-four hours of group counseling to address her substance abuse in May 2015, she failed to call in to the urinalysis testing center seventeen times between March and May 2015, missed three scheduled tests, submitted five diluted samples, and tested positive for methamphetamine each month.  And, despite having completed parenting courses, in June 2015, Mother arrived for a visit with Older Sister with both wrists slit six inches from her wrist to the middle of her forearms.  She was subsequently hospitalized for a few weeks following a "serious Depakote overdose."  During that time, she tested positive for marijuana and a "man made stimulant" and admitted using methamphetamine to lose weight.  Upon release, Mother's participation in substance abuse treatment, substance abuse testing, and trauma therapy was sporadic.  In October 2015, Mother stopped taking her psychiatric medication and experienced another mental health crisis.  By the time of trial in November 2015, Mother was participating in services, but continued to struggle with her mental health and had yet to demonstrate she was able to parent the Children, maintain sobriety for any appreciable length of time, or establish a stable source of income.

¶12          At trial, the DCS social worker supervising Mother's case testified Mother's struggle would likely continue for a prolonged, indeterminate period and severance was necessary to allow the Children to achieve permanency after being subject to abuse and neglect "all their

lives." Both testifying representatives from DCS described the anxiety the Children experience in the absence of a stable, permanent home. Younger Sister expressed a desire to be adopted and was in a potential adoptive home at the time. Older Sister stated that, although she would prefer Mother's parental rights not be terminated, she would consent to an adoption by a placement DCS had already identified if reunification was unsuccessful. Her counsel further advised that Older Sister's "main goal, it sounds like she wants to have finality, security, being able to have a forever home."

¶13　　　　A friend of Mother's and the Children's former nanny both testified they observed Mother to be an appropriate and affectionate parent and that they would provide continued support to Mother if the Children were returned. Mother did not testify.

¶14　　　　After taking the matter under advisement, the juvenile court found DCS had proven by clear and convincing evidence that termination of Mother's parental rights was warranted because Mother had been unable to remedy the circumstances causing the Children to be placed in out-of-home care for longer than fifteen months, *see* A.R.S. § 8-533(B)(8)(c), and because Mother had a history of chronic substance abuse and there were reasonable grounds to believe the condition would continue for a prolonged indeterminate period, *see* A.R.S. § 8-533(B)(3). The court also found severance was in the Children's best interests and entered an order terminating Mother's parental rights. Mother timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1) and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

### I.　DCS Proved Severance Was Warranted by Clear and Convincing Evidence.

¶15　　　　A parent's rights may be terminated if the juvenile court finds by clear and convincing evidence that DCS has made "a diligent effort to provide appropriate reunification services" and:

> The child has been in an out-of-home placement for a cumulative total period of fifteen months or longer . . . the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement and there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future.

A.R.S. § 8-533(B)(8)(c); Ariz. R.P. Juv. Ct. 66(C); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000). Mother does not dispute the length of time the Children were in out-of-home care or the diligence of DCS's efforts. But, she argues DCS failed to prove severance was warranted because "[t]he record shows a parent who actively participated in many services provided to her," and her completion of those services proved she had remedied the circumstances causing the Children to be in out-of-home care.

¶16 The juvenile court acknowledged Mother participated in a myriad of services designed to address the reasons the Children were removed including substance abuse testing, inpatient and outpatient substance abuse treatment, individual and group therapy, and drug court. The court nonetheless concluded that "Mother has not been able to demonstrate that she can maintain sobriety in order to parent her children" or that she can "provide the children with a safe and drug-free environment," and that there was a substantial likelihood she would be unable to exercise proper and effective parental care and control in the near future. These findings are supported by the record, which reflects Mother has been using methamphetamine for more than twenty years. The Children were removed from the home because she was using methamphetamine and continued to use even after admitting it "affected her home life, contributed to social problems, [and] put others in danger," and knowing her parental rights would be terminated if she did not stop. Indeed, Mother tested positive for methamphetamine consistently throughout the dependency and as recently as June 2015 — more than eighteen months after the Children were removed, just five months prior to the severance trial, and immediately after graduating from an inpatient substance abuse treatment program.

¶17 We do not reweigh the evidence on appeal; as the trier of fact, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004) (citing *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002)). Accordingly, we will affirm a termination order "unless there is no reasonable evidence to support" the court's factual findings. *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 2 (App. 1998) (citing *Maricopa Cnty. Juv. Action No. JS-4374*, 137 Ariz. 19, 21 (App. 1983), and *Maricopa Cnty. Juv. Action No. JS-378*, 21 Ariz. App. 202, 204 (1974)). Here, reasonable evidence supports the court's determination that Mother did not remedy the addiction to methamphetamine that prevented her from parenting the

Children appropriately within the statutory timeframe and would not be capable of doing so in the near future.[5] We find no abuse of discretion.

## II. Termination of the Parent-Child Relationship is in the Children's Best Interests.

**¶18** A finding of a statutory ground for severance under A.R.S. § 8-533 does not, standing alone, justify termination of parental rights; it must also be proved by a preponderance of the evidence that termination of the parent-child relationship is in the child's best interests. Ariz. R.P. Juv. Ct. 66(C); *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004) (citing *Michael J.*, 196 Ariz. at 249, ¶ 12). To establish best interests, it must be shown the child "would derive an affirmative benefit from termination or incur a detriment by continuing in the relationship." *Oscar O.*, 209 Ariz. at 334, ¶ 6. The benefit to the child, particularly when severance is sought based upon the length of time in an out-of-home placement, is the opportunity for permanency where "'parents maintain parental rights but refuse to assume parental responsibilities.'" *Id.* at 337, ¶ 16 (quoting *JS-6520*, 157 Ariz. at 243). The juvenile court may also consider whether the presence of a statutory ground for severance will have a negative effect on the child. *Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 350, ¶ 23 (App. 2013) (quoting *Maricopa Cnty. Juv. Action No. JS-6831*, 155 Ariz. 556, 559 (App. 1988)).

**¶19** Here, the juvenile court found termination of the parent-child relationship was in the Children's best interests because:

> Mother has not demonstrated the behavioral changes needed to provide the [Children] with a safe, healthy and stable environment. In addition to Mother's unresolved substance abuse issues, Mother's mental health is a concern. Twice Mother has been hospitalized in the last few months for attempted suicide. Mother has not demonstrated that she can provide the children with a safe and drug-free environment. . . . While [Older Sister] loves Mother and wishes to live with her, she also understands that Mother may not be able to care

---

[5] Because reasonable evidence supports the juvenile court's conclusion that severance was warranted based on the length of time the Children were in care, we need not address Mother's claims pertaining to other grounds. *See Jesus M.*, 203 Ariz. at 280, ¶ 3 (citing *Michael J.*, 196 Ariz. at 251, ¶ 27, and *Maricopa Cnty. Juv. Action No. JS-6520*, 157 Ariz. 238, 242 (App. 1988)).

for her. She is in agreement to be adopted by a family of her choice, or live with her sister, or stay in a group home. There is no question that the children have been in the juvenile court system for too long. They both deserve and need permanency. Termination of the parent-child relationships would provide them with emotional stability and permanency. The children are residing in the least restrictive placements under the circumstances of this case.

These findings reflect the court's conclusion that not only would permanency benefit the Children, but also that continuing the parental relationship would harm them by exposing them to an unsafe, unhealthy, and unstable environment and by depriving them of stability and permanency.

**¶20** Mother argues the juvenile court erred in concluding severance was in Older Sister's best interests because it should have given "more consideration" to the fact that Older Sister did not reside in an adoptive home at the time of trial, enjoyed visits with Mother, and asked the court not to grant the severance "if it's possible." Under these circumstances, Mother contends the benefit of severance to Older Sister is "speculative at best."

**¶21** However, neither Older Sister's placement in a non-adoptive home, nor her feelings regarding the severance, are determinative here. *See Bennigno R.*, 233 Ariz. at 351, ¶ 30 (affirming the juvenile court's best interests finding despite evidence of a bond between the parent and child); *Mary Lou C.*, 207 Ariz. at 50, ¶ 19 (holding that evidence "that the child is adoptable" is sufficient to support a best interests finding in a termination order); *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 352 (App. 1994) (finding a child benefits from severance if it would free the child for an adoption or if the child "would benefit psychologically from the stability an adoption would provide"). The juvenile court was aware of and considered both factors, and, on appeal, we will not second-guess the weight the court ultimately assigned to those circumstances. *See Jesus M.*, 203 Ariz. at 282, ¶ 12. The record also reflects the Children desire permanency, the Children are adoptable, and adoptive placements had been identified for both girls. The juvenile court's finding that severance is in both Children's best interests is supported by the record, and we find no abuse of discretion.

**CONCLUSION**

**¶22**　　　　The juvenile court's order terminating Mother's parental rights to the Children is affirmed.



**Ruth A. Willingham** · **Clerk of the Court**
**F I L E D** : ama