616 P.2d 948

**In the Matter of the Appeal in Pima County, JUVENILE ACTION NO. S–624.**

**No. 2 CA–CIV 3576.**

Court of Appeals of Arizona, Division 2.

July 22, 1980.

Review Denied Sept. 9, 1980.

Robert K. Corbin, Atty. Gen. by John R. Evans, Asst. Atty. Gen., Tucson, for appellant.

Barry Hochman, Tucson, for appellee.

James Crane, Tucson, for minors.

## OPINION

HATHAWAY, Chief Judge.

Appellant, the Department of Economic Security (DES), claims that it sustained its burden of proving the grounds alleged in its petition to sever the parental rights of the natural father of two minor children. We find no basis for overturning the juvenile court's determination and affirm.

Appellant filed a petition to sever the parental rights of both the natural mother and father.[1] As to the father, the petition alleged that he had abandoned the children and had made no effort to maintain a parental relationship with them. It also alleged that he had been deprived of his civil liberties due to conviction of a felony, the sentence for which was of such length that the children would be deprived of a normal home for a period of years. The only two witnesses at the severance hearing were the father and a DES caseworker. At the conclusion of the hearing, the juvenile court found that appellant had failed to carry its burden of proof that the father intended to abandon the children and ordered the petition dismissed. No finding was made as to the other ground alleged, i. e., that the sentence being served by the father was of such length that the children would be deprived of a normal home for a period of years. We therefore presume that, as to

this second ground, the court found appellant had also failed to sustain its burden of proof.

It is undisputed that the father had neither seen nor communicated with the children since November 1977. Also, in February 1978, he was committed to the Department of Corrections for not less than two nor more than four years and in May 1978, was committed to the Department of Corrections for not less than five nor more than five years and one day commencing January 11, 1978. In December 1977, the children were adjudicated dependent. DES was given their care, custody and control, and the children had been in agency foster homes from that time.

The father testified that while he was in the county jail in 1978, he learned that the children were at Casa de los Ninos, a temporary child care facility, and that the mother assured him she was going to try to get them back. He was incarcerated at Fort Grant and would be eligible for work release in December 1980. He stated that his family would be willing to help him when he was released and help with the care of the children, and that it was common practice in his family that some of the children were raised by aunts and cousins. During the preceding three years, he did not know where the children were and he could not get the telephone number from DES. He had never sent any letters because he had difficulty communicating in writing. In 1978, when he first arrived at Fort Grant, he called a relative to ask for help in locating the children and she told him that she could get no information from DES.

The father was under the impression that some people were taking care of his children, but testified that no one ever tried to contact him until he received a "paper" saying they were going to be put up for adoption.

The caseworker testified that the mother indicated to him in December 1978 that she

---

1. The mother did not contest the petition and, after finding that she had abandoned the children, the juvenile court ordered severance of her parental rights.

did not know where the father was. It was not until January 1979, when a relative of the father contacted him, that he learned the father was in the state prison. No attempt was made to contact the father and the petition for severance was filed because the father had had no contact with the children since 1977 and was serving a five–year term. Telephone inquiries from the father's relative as to where the children were met with no success. In response to a question from the court, the caseworker admitted that even if the relative had come into the DES office, he would not have told her where the children were. The tenor of his testimony was that it was in the best interests of the children that they go into a home "where they will be treated properly." It was apparent that no attempt had been made to contact the father or to assist the other relatives in an attempt to preserve the familial ties.

We have pointed out that severance of the parent–child relationship is a serious matter and should not be considered a panacea. Rather, it should be resorted to only where concerted efforts to preserve the relationship fail. *Arizona State Department of Economic Security v. Mahoney*, 24 Ariz. App. 534, 540 P.2d 153 (1975). We have also recognized that parents enjoy constitutional rights with regard to raising their children and that a child has a right to be with his natural parents, *Hernandez v. State ex rel. Arizona Department of Economic Security*, 23 Ariz.App. 32, 530 P.2d 389 (1975), and that the state and its courts should do everything in their power to keep the family together and not destroy it. *In re Adoption of Hyatt*, 24 Ariz.App. 170, 536 P.2d 1062 (1975).

■ The term "abandon" must be somewhat elastic and questions of abandonment and intent are questions of fact for the resolution of the trial court. *Anonymous v. Anonymous*, 25 Ariz.App. 10, 540 P.2d 741 (1975); *Matter of Pima County Severance Action No. S–110*, 27 Ariz.App. 553, 556 P.2d 1156 (1976). Although the best interests of the child are a valid factor in deciding an abandonment allegation, abandon-

ment cannot be predicated solely on the best interests of the child. The appropriate test is "whether there has been conduct on the part of the parent which implies a conscious disregard of the obligations owed by a parent to the child, leading to the destruction of the parent–child relationship." *Anonymous*, 25 Ariz.App. at 12, 540 P.2d at 743.

■ The natural father's imprisonment alone did not justify severance; it was merely one factor to be considered in evaluating the father's ability to perform parental obligations. *Staat v. Hennepin County Welfare Board*, 287 Minn. 501, 178 N.W.2d 709 (1970); *Matter of Welfare of Tarango*, 23 Wash.App. 126, 595 P.2d 552 (1979); *In re Sego*, 82 Wash.2d 736, 513 P.2d 831 (1973); *Matter of Troy*, 27 Or.App. 185, 555 P.2d 933 (1976). Although imprisonment does not per se provide a legal defense to a claim of abandonment, *Matter of Rose Lynn G.*, 57 Cal.App.3d 406, 129 Cal.Rptr. 338 (1976), the juvenile judge had an opportunity to assess the father's credibility and conclude that his imprisonment contributed to his failure to maintain contact with the children.

■ The evidence supports the juvenile court's apparent conclusion that objective consideration of the father's behavior as a course of conduct did not imply a conscious disregard of the obligations owed by him to his children. His background shows that it was a customary practice in his family to take care of each other's children. In fact, he had been raised by an aunt rather than his parents. From the time the natural mother abandoned the children until the severance proceedings were commenced, DES made no effort to reunite the children with the family. To the contrary, the family's attempts to establish a relationship were completely frustrated. The testimony of the caseworker reflects a reluctance to maintain the status quo because it would be better for the children to be placed in an adoptive home. This is not the controlling criterion in deciding whether or not to terminate the parent–child relationship. *Mat-*

ter of Appeal in Pima County Juv. Act. No. S–111, 25 Ariz.App. 380, 543 P.2d 809 (1975), rev. den. 113 Ariz. 247, 550 P.2d 625 (1976).

At the time of the hearing, it was not established that the father's sentence was of such length that the children would be deprived of a normal home for a period of years. Although the father had been sentenced in 1978 to a five–year sentence, his unrefuted testimony was that he was to be released on a work–release program at the end of 1980 and that his relatives were available to care for and provide for the children. Since DES had not demonstrated that integration of the children into the father's home was improbable in the foreseeable future, the juvenile court properly declined to consider the father's imprisonment as a reason for severance.

We agree that DES had failed to prove by a preponderance of evidence the grounds alleged for severance, and dismissal of the petition was proper.

Affirmed.

HOWARD and RICHMOND, JJ., concur.