NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JESUS S., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY,[1] B.S., *Appellees*.

No. 1 CA-JV 15-0326
FILED 5-5-2016

Appeal from the Superior Court in Maricopa County
No. JS17730
The Honorable Bruce R. Cohen, Judge

**AFFIRMED**

COUNSEL

Robert D. Rosanelli, Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant Father*

Arizona Attorney General's Office, Tucson
By Daniel R. Huff
*Counsel for Appellee Department of Child Safety*

---

[1] Pursuant to S.B. 1001, Section 157, 51st Leg., 2d Spec. Sess. (Ariz. 2014) (enacted), the Department of Child Safety ("DCS") is substituted for the Arizona Department of Economic Security in this matter. *See* ARCAP 27. For consistency, we refer to DCS throughout this decision.

---

## MEMORANDUM DECISION

Judge Donn Kessler delivered the decision of the Court, in which Presiding Judge Peter B. Swann and Judge Lawrence F. Winthrop joined.

---

**K E S S L E R**, Judge:

¶1        Jesus S. ("Father") appeals from the juvenile court's order terminating his parental rights to his daughter, BS.  For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶2        Father and Alexsandra G. ("Mother") are the biological parents of BS, born in August 2011.[2]  BS was removed from Mother's care in April 2014.  At that time, Father was incarcerated and pending deportation.   The Department of Child Safety ("DCS") filed a dependency petition, and the juvenile court adjudicated BS dependent as to Father.

¶3        In November 2014, DCS filed a petition to terminate Father's parental rights based on his length of sentence pursuant to Arizona Revised Statutes ("A.R.S.") section 8-533(B)(4) (Supp. 2015).[3]  Father was personally served with the petition and notice of hearing in December.  The notice of hearing provides that

> failure to personally appear in court at the initial hearing, pretrial conference, status conference or termination adjudication, without good cause shown, may result in a finding that you have waived your legal rights and have admitted the allegations in the Petition.  In addition, if you fail to appear without good cause, the hearing may go forward in your absence and may result in termination of your parental rights based upon the record and the evidence presented to the Court.

---

[2] Mother's rights were also terminated, but she is not a party to this appeal.
[3] We cite to the current version of the relevant statutes unless revisions material to this decision have occurred.

DCS later amended the petition to include the ground of abandonment under A.R.S. § 8-531(1) (Supp. 2015) and withdrew the length-of-sentence ground.

¶4            Father appeared telephonically at the initial severance hearing in January 2015 and a pretrial conference in March 2015.    Father failed to appear for a pretrial conference in June 2015, and the juvenile court noted that Father was possibly in federal custody at a facility in Eloy.    In August 2015, Father failed to appear at the contested severance hearing. DCS requested the court proceed in Father's absence and Father's counsel objected because Father may have been deported.    The juvenile court set a contested severance hearing for September.

¶5            Father again failed to appear at the September severance hearing.  When asked why Father was not present, Father's counsel advised that "[her] office did speak with [the] paternal grandmother who had reported that Father had been deported to Mexico."   The court ultimately found that even if he was deported he had means to participate in the proceedings by contacting his counsel or the court, and as a result, his absence was not with good cause:

> The court is told that Father may have been deported but the court is unable to find that his non-appearance is with good cause.    Even if deported, [F]ather had the ability to communicate with his attorney or contact this Court, neither of which occurred.

¶6            At the severance trial, the ongoing case manager testified that throughout the dependency Father failed to provide any support to or maintain regular contact with BS.  The only contact in the record is one card sent to BS and two letters to the case manager dated May 2014 and March 2015.[4]  Father did, however, request and receive photos of BS; and although he also requested visitation, BS was unable to visit Father in prison because of BS's health issues.[5]  The case manager further stated that upon his release in June 2015, Father may have been placed on an immigration hold and DCS was unable to contact him or his family members.  Lastly, the case manager testified that BS's current placement was meeting her needs and she was adoptable.

---

[4] The first letter was addressed to the case manager but refers to BS.
[5] BS has a history of asthma.  She was cleared to travel to visit Father so long as the adult accompanying her was familiar with her condition.

¶7          The court ultimately found the evidence supported the allegation that Father abandoned BS:

> [T]he evidence establishes that Father has not provided any financial support for [BS].  He has not maintained any meaningful personal contact but did provide a few letters.
>
> Father last [] saw the child [] in January[] 2014.  It is noted that Father did request visits while he was in prison.  The visits did not occur, partially due to a health issue with the child.  It is important to note that even if visits had occurred, the level of contact would have been nowhere near what would be required to maintain even the basics of a parent-child relationship.  It is also meaningful that since he completed his prison term, Father has not taken any steps to develop or maintain his relationship with the child.  Even if he was held by ICE and then deported following his prison term, he still could have made efforts toward the relationship.  He failed to do so.

Father timely appealed.[6]  We have jurisdiction pursuant to A.R.S. §§ 8-235(A) (2014), 12-120.21(A)(1) (2003), and -2101(A)(1) (Supp. 2015).

## DISCUSSION

¶8          On appeal, Father argues that: (1) the juvenile court abused its discretion in finding Father waived his right to contest the termination by failing to attend the adjudication hearing, and (2) there is insufficient evidence to support the juvenile court's ruling terminating Father's parental rights based on abandonment.

¶9          A parent's right to custody and control of his or her own child is fundamental, *Santosky v. Kramer*, 455 U.S. 745, 753 (1982), but not absolute, *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶ 12 (2000).  To justify severance of a parental relationship, the State must prove one of the statutory grounds in A.R.S. § 8-533 by clear and convincing evidence.  *Michael J.*, 196 Ariz. at 249, ¶ 12.  In addition, the court must find by a

---

[6] On the same day, Father also filed a motion asking the juvenile court to reconsider the no good cause finding for Father's non-appearance.  The motion confirms that Father was in Mexico at the time of trial, and provides that he could appear by phone if the court set a hearing.  The juvenile court denied the motion in an unsigned minute entry.  Father has not sought to appeal from that order.

preponderance of the evidence that severance of the relationship is in the child's best interest. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). Because the juvenile court is in the best position to weigh evidence and judge credibility, "we will accept the juvenile court's findings of fact unless no reasonable evidence supports those findings, and we will affirm a severance order unless it is clearly erroneous." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). We do not reweigh the evidence, but "look only to determine if there is evidence to sustain the court's ruling." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

I.     The juvenile court did not err in finding that Father failed to appear without good cause at the adjudication hearing.

**¶10**     Father first argues that the juvenile court abused its discretion in finding that Father failed to appear without good cause and waived his right to contest the termination of his parental rights. Father specifically argues that the juvenile court erred because, although it was assumed that Father was deported, no one could state Father's status with actual certainty at the time of the adjudication hearing. Father argues that the court should have directed DCS to locate Father, and it erred in assuming he had control over his ability to communicate with counsel and the court. We disagree.

**¶11**     If a parent fails to appear at a termination adjudication hearing without good cause, the juvenile court can proceed if the parent had notice of the hearing, was properly served, and had been previously admonished regarding consequences of failure to appear. Ariz. R. Juv. P. 66(D)(2). "[A] finding of good cause for failure to appear is largely discretionary." *Adrian E. v. Ariz. Dep't of Econ. Sec.*, 215 Ariz. 96, 101, ¶ 15 (App. 2007) (citation omitted). "We therefore review the finding for an abuse of discretion and generally will reverse only if the juvenile court's exercise of that discretion was 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *Id.* (quoting *Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 83, ¶ 19 (App. 2005).

**¶12**     Here, although Father argues that the juvenile court only speculated as to his location at the time of the severance trial, his counsel specifically stated that "[her] office did speak with [the] paternal grandmother who had reported that Father had been deported to Mexico."[7]

---

[7] This was later confirmed in Father's motion asking the juvenile court to reconsider the no good cause finding for Father's non-appearance. The motion states that Father was in Mexico at the time of trial.

Thus, there is evidence in the record confirming Father's status, and we cannot say the juvenile court's finding was manifestly unreasonable. Ultimately, we agree with the court that it was Father's obligation to maintain contact with counsel following his deportation and, in the absence of evidence indicating efforts by Father to initiate or maintain contact, failure to do so cannot be considered excusable neglect. *See Ulibarri v. Gerstenberger*, 178 Ariz. 151, 163 (App. 1993) (explaining "[n]eglect is excusable when it is such as might be the act of a reasonably prudent person in the same circumstances"); *Hackin v. First Nat'l Bank of Ariz.*, 5 Ariz. App. 379, 385 (1967) ("We recognize that where a client wil[l]fully or negligently fails to keep in touch with an attorney so that the attorney cannot properly inform him as to the pending litigation that he cannot complain because he does not realize the date of the trial.").

II.      There is sufficient evidence in the record to support the finding that Father abandoned BS.

¶13      Father argues the court erred in finding he had abandoned BS pursuant to A.R.S. § 8-531(1). Abandonment is defined as

> the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

A.R.S. § 8-531(1). Whether a child has been abandoned is based on a parent's conduct, and not subjective intent. *Michael J.*, 196 Ariz. at 249, ¶ 18; *see also Kenneth B. v. Tina B.*, 226 Ariz. 33, 36, ¶ 16 (App. 2010) (internal citations omitted) ("[A]bandonment under [A.R.S. § 8-531(1)] no longer turns on whether a parent has intentionally relinquished a child. Instead, [. . .] abandonment exists when a parent has failed to provide reasonable support and to maintain regular contact and a normal parental relationship with the child.").

¶14      In an abandonment claim, imprisonment provides neither a per se defense nor justification for termination. *Michael J.*, 196 Ariz. at 250, ¶ 22 (quoting *In re Pima Cty. Juvenile Action No. S-624*, 126 Ariz. 488, 490 (App. 1980)). It is "merely one factor to be considered in evaluating the father's ability to perform parental obligations." *S-624*, 126 Ariz. at 490;

*Michael J.*, 196 Ariz. at 250, ¶ 22. If circumstances are such that conventional methods of bonding are unavailable, a father "must act persistently to establish the relationship however possible and must vigorously assert his legal rights to the extent necessary." *In re Pima County Juvenile Action No. S-114487*, 179 Ariz. 86, 97 (1994); *Michael J.*, 196 Ariz. at 250, ¶ 22.

**¶15** The concepts underlying abandonment and considered in the statute are "somewhat imprecise and elastic." *In re Maricopa Cty. Juvenile Action No. JS-500274*, 167 Ariz. 1, 4 (1990). "Therefore, questions of abandonment and intent are questions of fact for resolution by the trial court." *Id.* On review, we examine the facts in a light most favorable to sustaining the juvenile court's judgment. *Michael J.*, 196 Ariz. at 250, ¶ 20.

**¶16** Father argues that he made diligent efforts to maintain a parental relationship with BS but was unable to do so because requested visitation never occurred. Visitation, however, is not the only means that Father could have established legal or emotional bonds with BS. Father neither provided BS with financial support, nor did he attempt to contact her following his release and deportation. He also failed to contact his lawyer or DCS after his release. "The burden to act as a parent rests with the parent, who should assert his legal rights at the first and every opportunity." *Id.* at 251, ¶ 25. Accordingly, we find there was sufficient evidence in the record to support the juvenile court's order terminating Father's rights based on abandonment.

## CONCLUSION

**¶17** Having found there is sufficient evidence to support the juvenile court's findings, we affirm its order to terminate Father's parental rights to BS pursuant to A.R.S. § 8-531(1).



Ruth A. Willingham · Clerk of the Court
FILED: ama

7