NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

DEMETRICE H., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, D.H., *Appellees*.

No. 1 CA-JV 20-0246
FILED 5-27-2021

Appeal from the Superior Court in Maricopa County
No. JD 37064
The Honorable Lori H. Bustamante, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm, Scottsdale
By Christopher Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Eric Devany
*Counsel for Appellee*

---

## MEMORANDUM DECISION

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge D. Steven Williams and Judge James B. Morse Jr. joined.

---

**C A M P B E L L**, Judge:

¶1 Demetrice H. ("Father") appeals the termination of his parental rights to Damien[1] based on both the abandonment and length-of-incarceration grounds. *See* A.R.S. § 8-533(B)(1), (4). Father also asks that he be permitted to appeal the denial of his motion to place Damien in the physical custody of paternal grandmother ("Grandmother"). Father has shown no error. We affirm the severance. Having affirmed the severance, Father lacks standing to appeal the child's placement.

## BACKGROUND

¶2 Father and Kiana R. ("Mother") are the biological parents of Damien, born in 2013. Mother also has four more children ("Siblings"), born between 2015 and 2020.[2]

¶3 Mother initially took care of Damien after she and Father broke up in 2015. Father then took physical custody of him near the end of 2015, but he sent him back to live with Mother in 2017. Shortly after, Father was arrested and charged with various counts of robbery. Father was incarcerated in Maricopa County Jail from May 2017 to May 2018. After pleading guilty, he was sentenced to a term of five years' imprisonment. Father's expected release date is in August 2021.

¶4 Following a domestic violence incident while in Mother's care in 2019, DCS took Damien and two of his Siblings into temporary physical custody, placing them in licensed foster homes. Shortly after, the superior court found Damien dependent regarding Father based on neglect and regarding Mother on abuse and neglect grounds. Family reunification was the case plan for both parents.

¶5 In May 2019, Grandmother expressed interest in being Damien's out-of-home placement but failed to begin the evaluation process.

---

[1]  A pseudonym is used to protect the child's identity.
[2]  Neither Mother nor the other fathers are party to this appeal.

Two months later, she contacted DCS to request visits with Damien but confirmed she did not want to be his placement. Over six months later, Grandmother then asked to be Damien's placement. DCS denied her request because she could not meet Damien's behavioral health needs and had physical limitations which hampered her from caring for a young child.

¶6　　　　In January 2020, the superior court changed the case plan to severance and adoption. At that time, Mother continued to ignore the safety concerns that brought Damien into out-of-home care, could not provide Damien a safe and stable home, and could not provide for his basic needs in the foreseeable future. Father likewise could not provide for the child because he was in prison. DCS moved to terminate Mother's rights to Damien based on the nine-months in an out-of-home placement grounds under A.R.S. § 8-533(B)(8)(a) and (b). DCS moved to terminate Father's parental rights based on the abandonment and length-of-incarceration grounds. *See* A.R.S. § 8-533(B)(1), (4).

¶7　　　　In July 2020, Father filed a motion to place Damien in Grandmother's physical custody. DCS objected, arguing it would not be in Damien's best interests. After a contested termination hearing, the superior court terminated Father's parental rights to Damien based on abandonment and length-of-incarceration and Mother's rights to Damien and three of his Siblings based on the length of time the children had been in out-of-home placement. *See* A.R.S. § 8-533(B)(1), (4), (8)(a). The court also denied Father's motion for change in Damien's custody. Father now appeals.

## DISCUSSION

¶8　　　　Parents have a "fundamental liberty interest in the care, custody, and management of their children." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24 (2005) (citing *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)). That right, however, is not absolute. Relevant here, the superior court may terminate a parent's rights if it finds by clear and convincing evidence that a parent has abandoned his child. A.R.S. § 8-533(B)(1). "[A] decision that must be based on clear and convincing evidence will be affirmed 'unless we must say as a matter of law that no one could reasonably find the evidence to be clear and convincing.'" *Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 94, ¶ 7 (App. 2009) (citation omitted).

### I.　　Abandonment

¶9　　　　Father argues the superior court erred by finding he abandoned Damien. He asserts that he had a relationship with Damien before his incarceration and suggests he maintained that relationship while

in custody. To support his position, Father invites us to reweigh the evidence regarding his efforts to maintain his relationship with his son. However, the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004). We will not reweigh the evidence. *See Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 81, ¶ 13 (App. 2005).

¶10      As defined by statute

> "Abandonment" means the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

A.R.S. § 8-531(1). "[A]bandonment is measured not by a parent's subjective intent, but by the parent's conduct: the statute asks whether a parent has provided reasonable support, maintained regular contact, made more than minimal efforts to support and communicate with the child, and maintained a normal parental relationship." *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249–50, ¶ 18 (2000). "What constitutes reasonable support, regular contact, and normal supervision varies from case to case." *Pima Cnty. Juv. Severance Action No. S-114487*, 179 Ariz. 86, 96 (1994). We "view the evidence and reasonable inferences to be drawn from it in the light most favorable to sustaining the court's decision." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (2009) (citations omitted).

¶11      At the time of the contested termination hearing, Father had been in jail or prison for approximately half of Damien's life. Although imprisonment does not establish abandonment per se, it is a "factor to be considered in evaluating the father's ability to perform parental obligations." *Pima Cnty. Juv. Action No. S–624,* 126 Ariz. 488, 490 (App. 1980). When "circumstances prevent the . . . father from exercising traditional methods of bonding with his child, he must act persistently to establish the relationship however possible and must vigorously assert his legal rights to the extent necessary." *S-114487*, 179 Ariz. at 97.

¶12      The superior court found that "[Father] failed to undertake any of the myriad of responsibilities associated with parenting due[,] in

part, to his incarceration and has relied upon others to parent the child. The court also found that Father "had minimal to no contact with the child since the inception of the dependency and has not furthered any sort of emotional bond with the child during his incarceration." Based on these findings, the court held that Father abandoned Damien. Clear and convincing evidence in the record supports the court's conclusion.

¶13        Father was incarcerated in the Maricopa County Jail from May 2017 to May 2018. Father testified that, during that year, he never wrote to Damien and spoke to him on the phone fewer than five times. After pleading guilty in May 2018, Father was sentenced to prison. DCS reported that Father was initially hesitant to remain in contact with Damien because he denied he was Damien's father. The record shows that Father did not want photos of or mail contact with Damien until the end of May 2019. A DCS specialist testified that Father only wrote to Damien once prior to the termination trial. Father had no in-person contact with Damien during his incarceration, never sent Damien financial gifts or support, and only resumed telephonic visits with him in the latter part of 2019.

¶14        Father asserts his lack of contact with Damien was justifiable because it was, in part, due to his inability to purchase envelopes and stamps before he could get a job at the prison. Even if accepted as true, clear and convincing evidence still supports the superior court's conclusion that Father abandoned Damien. Rather than "act[ing] persistently to establish the relationship however possible," *S-114487*, 179 Ariz. at 97, Father rejected DCS's offer to send him photos of Damien before May 2019, did not request visitation with Damien between February and August of 2019, and only wrote to Damien one time after securing a job at the prison. Further, "in deciding whether a parent has abandoned a child as defined in § 8-531(1), a court should consider each of the stated factors—whether a parent has provided 'reasonable support,' 'maintain[ed] regular contact with the child' and provided 'normal supervision.'" *Kenneth B. v. Tina B.*, 226 Ariz. 33, 37, ¶ 18 (App. 2010) (citing A.R.S. § 8-531(1)). The record, including Father's own testimony, shows that Father has failed to fulfill any of these responsibilities since the beginning of his incarceration in 2017.

¶15        Father also argues the superior court erred in finding he abandoned his son because, prior to his incarceration, he parented Damien. However, the superior court based its decision on Father's conduct during the term of his incarceration and the duration of Damien's dependency, all of which took place after Damien left Father's custody. Substantial evidence supports the court's abandonment finding.

## II.    Length of Incarceration

**¶16**        Father argues that insufficient evidence was presented to support the superior court's termination of his parental rights to Damien based on the length-of-incarceration grounds under A.R.S. § 8-533(B)(4). Because we affirm the court's termination order based on abandonment, we need not consider whether the court's findings justified termination on other grounds. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002).

## III.    Best Interests

**¶17**        Father claims there is insufficient evidence to support the superior court's best-interests finding. Father also asserts that severance is not in Damien's best interests because he loves Damien, parented him before his incarceration, wants to parent him upon his release, and because the current adoptive placement separates Damien from three of his Siblings.

**¶18**        To sever parental rights after finding that a parent has abandoned his child, the superior court must determine by a preponderance of the evidence that severance is in the child's best interests. *Sandra R. v. Dep't of Child Safety*, 248 Ariz. 224, 227, ¶ 12 (2020). "[A] determination of the child's best interest must include a finding as to how the child would benefit from a severance *or* be harmed by the continuation of the relationship." *Maricopa Cnty. Juv. Action No. JS–500274*, 167 Ariz. 1, 5 (1990) (emphasis in original). "The 'child's interest in stability and security' must be the court's primary concern." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150, ¶ 12 (2018) (citation omitted). We will affirm the termination of parental rights unless it is clearly erroneous. *Jesus M.*, 203 Ariz. at 280, ¶ 4. A ruling is clearly erroneous if it is unsupported by substantial evidence. *Desiree S. v. Dep't of Child Safety*, 235 Ariz. 532, 534, ¶ 7 (App. 2014).

**¶19**        Here, the record supports the superior court's finding that terminating Father's parental rights is in Damien's best interests. At the time of the termination hearing, Damien had been in an adoptive placement with one of the Siblings for more than a year. Although two of the Siblings were in a different placement, both placements were committed to maintaining contact between the children. Additionally, Damien's placement was attuned to and able to meet his special needs.

**¶20**        At that hearing, DCS opined that terminating Father's parental rights would free Damien for adoption, giving him permanency and stability. Adoption would also provide him a home without physical

abuse, substance abuse, and domestic violence—with a caregiver who would meet his needs. The superior court found that Damien's current placement is meeting his needs and intends to adopt him, which would provide stability and permanency. The court also found that Damien's prospective adoption is legally possible and likely. In contrast, the court also found that Father is "incapable of providing a normal life for [Damien] due to [his] incarceration." "When a current placement meets the child's needs and the child's prospective adoption is otherwise legally possible and likely, a [superior] court may find that termination of parental rights, so as to permit adoption, is in the child's best interests." *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 12 (2016). We affirm.

## IV.     Grandmother's Physical Custody

**¶21**       Having affirmed the superior court's termination of Father's parental rights, he lacks standing to challenge Damien's placement. *See Sands v. Sands*, 157 Ariz. 322, 324 (App. 1988) ("It is clear that once the order of severance was issued, the father's standing as a parent terminated."); *Antonio M. v. Ariz. Dep't of Econ. Sec.*, 222 Ariz. 369, 370–71, ¶ 2 (App. 2009) ("[O]nce [the father's] parental rights were terminated, he no longer had standing to challenge [the child's] placement and anticipated adoption."). A termination order "divest[s] the parent and the child of all legal rights, privileges, duties and obligations with respect to each other except the right of the child to inherit and support from the parent." A.R.S. § 8-539. Because we affirm the termination of Father's parental rights, Father lacks standing to appeal the denial of his motion to change Damien's physical custody.

## CONCLUSION

**¶22**       We affirm the superior court's termination of Father's parental rights to Damien. We deny Father's request to appeal the denial of his motion to change Damien's physical custody.

