NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JEUDA K., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, E.P., J.P., M.P., E.B., *Appellees*.

No. 1 CA-JV 17-0522
FILED 4-26-2018

Appeal from the Superior Court in Maricopa County
No. JD529498
The Honorable Rosa Mroz, Judge

**AFFIRMED**

COUNSEL

Robert D. Rosanelli, Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Amber E. Pershon
*Counsel for Appellee Department of Child Safety*

**MEMORANDUM DECISION**

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge James B. Morse Jr. joined.

**J O N E S**, Judge:

¶1            Jeuda K. (Mother) appeals the juvenile court's order terminating her parental rights to E.P., J.P., M.P., and E.B. (collectively, the Children), arguing only that the Department of Child Safety (DCS) failed to prove the statutory grounds for severance by clear and convincing evidence.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2            In November 2015, DCS received a report that E.P., J.P., and M.P., then ages eleven, nine, and four, had been left in the care of their fourteen-year-old brother, S.P., for several days at a time while Mother stayed with her boyfriend, Cameron B.[1]  This was not the first time Mother had left the children alone for an extended period.  Additionally, the home was in disarray, infested with cockroaches, and coated in animal feces and urine.   The food in the refrigerator was spoiled, and the children had been seen walking to a convenience store late at night to buy food with the credit card Mother left for them.

¶3            DCS immediately removed all four children from Mother's care and filed a petition alleging they were dependent as to Mother on the grounds of neglect.[2]   The juvenile court adjudicated them dependent in December 2015 and adopted a case plan of family reunification.  Around this same time, Mother became pregnant with a fifth child, E.B.

¶4            Mother agreed to undergo substance abuse testing of both her hair follicle and urine, but did not do so.  She was also referred for services, including visitation, a psychological exam, individual counseling, and parenting classes, in which she partially participated.  In May 2016, Mother was arrested for a probation violation and incarcerated for eight days.  After twice failing to appear for a psychological evaluation, Mother completed the evaluation in June.  The psychologist determined any children in

---

[1]       "[W]e view the evidence and reasonable inferences to be drawn from it in the light most favorable to sustaining the court's decision." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (citing *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 13 (App. 2002)).

[2]       DCS also alleged these children were dependent as to their father on the grounds of neglect and substance abuse.  His parental rights were terminated in December 2017, and he is not a party to this appeal.

Mother's care remained at risk of neglect and recommended she participate in individual counseling and parent aide services.

**¶5**         That same month, Mother admitted using marijuana two to three times per week while pregnant. The juvenile court ordered that she complete both hair follicle and urinalysis testing for substances no later than June 14, 2016. She did not do so. Mother submitted to urinalysis testing for the first time on June 24, 2016 — more than six months after the Children were removed from her care — and tested positive for marijuana.

**¶6**         In August 2016, E.B. was born substance-exposed to marijuana and removed from Mother's care at the hospital. At the time, the home Mother shared with Cameron, E.B.'s father, was so cluttered that "it [was] near impossible to pass through" and entire rooms were inaccessible. During the scheduled visit, the DCS caseworker observed two bongs in the master bedroom and one on the bathroom counter. Mother blamed Cameron for both the bongs and the mess. Cameron, who has a history of marijuana and methamphetamine use, refused to participate in substance abuse testing or treatment and maintained Mother's marijuana use had not caused E.B. any harm.

**¶7**         Mother finally submitted to two hair follicle tests in September 2016; the first was positive for methamphetamine, and the second was positive for methamphetamine and marijuana. Mother blamed her positive methamphetamine test result on cold medicine and maintained that her obstetrician advised her to smoke marijuana during pregnancy to help with nausea. Mother did not provide any evidence to corroborate these claims; in fact, the testing agency confirmed the positive methamphetamine result.

**¶8**         DCS referred Mother for ongoing substance abuse treatment and testing. In September and October, Mother submitted thirteen urinalysis samples. One tested positive for opiates and five tested positive for benzodiazepines, although she was able to produce a prescription for these substances. She also tested positive for alcohol — a violation of her probation. Mother was closed out of parent aide services unsuccessfully but completed a substance abuse assessment in October, in which she was diagnosed with amphetamine and cannabis use disorders, and was assigned to standard outpatient treatment and weekly group therapy. The living conditions in her home did not improve, and her participation in visitation was inconsistent.

**¶9** Despite having engaged in substance abuse treatment, in November 2016, Mother missed two consecutive drug tests, submitted two diluted samples, and tested positive for benzodiazepines one time. She did not provide an updated prescription for the benzodiazepines, and she stopped regularly attending individual counseling. In December, she again missed two scheduled tests and later tested positive for alcohol. Additionally, the DCS caseworker attempted an unannounced visit at the home during a time Mother advised she would be available; no one answered the door or the phone.

**¶10** In January 2017, the juvenile court found E.B. dependent as to Mother on the grounds of substance abuse and neglect and affirmed a case plan of family reunification. That month, Mother tested as scheduled and the results were negative for substances. She missed three scheduled urinalysis tests in February and four scheduled urinalysis tests in a row in March and April; during this period, she no-showed or cancelled visitation five times and one-on-one parenting skills sessions six times. At the same time, she was closed out of individual counseling for lack of contact. DCS then became concerned about possible domestic violence issues when Mother presented to services with unexplained bruising. When DCS advised Mother that her relationship with Cameron was a barrier to reunification, Mother chose to stay with Cameron, noting they could just "start over having other children." Shortly thereafter, the court changed the case plan for the Children to severance and adoption.[3]

**¶11** In April 2017, DCS observed improvement in the conditions of Mother's home and approved in-home visits, albeit restricted to the first floor. At the time, DCS identified several remaining "areas of concern" in the home and noted its concerns regarding substance abuse and domestic violence had yet to be addressed. A few months later, permission for in-home visits was revoked when the home was observed to be "no longer safe to walk through," and the second parent aide referral was closed out unsuccessfully.

**¶12** Although Mother completed standard outpatient substance abuse treatment in May 2017 and moved on to recovery maintenance, she was required to start the maintenance program over as a result of "her lack of participation and the number of missed classes." Her attendance and participation did not improve in the second round of recovery

---

[3] The juvenile court changed the case plan for the oldest child, S.P., to guardianship, and with Mother's consent, created a permanent guardianship in November 2017. S.P. is therefore not a party to this appeal.

maintenance. Mother refused to participate in a hair follicle test in August 2017 after she appeared to be under the influence of drugs at a visit. She also continued to miss groups of tests, which suggested to the DCS caseworker that Mother had used illegal drugs and was "trying to wait for the drug to get out of [her] system so [she] will test clean again."

¶13 Shortly before trial, Mother was hospitalized for four days "for mental health reasons" after overdosing on sleeping pills. During the entirety of the proceeding, Mother completed only one parenting class, "for dads," sponsored by Babies R Us. She then self-referred for individual counseling just two weeks before trial.

¶14 At trial in November 2017, the DCS caseworker expressed concern regarding Mother's substance abuse, inconsistency with testing and treatment, and refusal to acknowledge either her own or Cameron's methamphetamine use. Additionally, Mother apparently continued to live, and maintain a romantic relationship, with Cameron even after being advised multiple times that his refusal to participate in any services was a barrier to her reunification with the Children and despite DCS's offers to provide housing assistance.[4] The home itself remained unsafe, even for visitation. The caseworker testified that unless and until Mother admitted to and addressed the problems in her home — including living conditions, domestic violence, and substance abuse — it remained an unsafe living environment for the Children.

¶15 The DCS caseworker also testified that the Children were all placed with extended family members who were meeting their regular and special needs and willing and able to adopt them. She added the Children would benefit from termination of Mother's parental rights because it would provide them the opportunity for permanency in a safe, stable home free of domestic violence and substance abuse.

¶16 Mother admitted it is unsafe and inappropriate to parent while under the influence of methamphetamine or marijuana. She testified she first used marijuana in college and then never used again until her four older children were in DCS's care and she was pregnant with her fifth child.

_____

4 Although Mother reported at trial that she had ended her relationship with Cameron a few weeks earlier, she had not yet moved out of his home, had no definite plans to do so, and had not told the Children they were no longer together. Moreover, Mother had previously reported to a parent aide that Cameron would move out of the house so Mother could "get [the Children] back, but they would stay a couple."

Despite testing positive for methamphetamine, she denied using any other substances except alcohol "on occasion" and denied "hav[ing] a problem with substances." Mother first denied any knowledge that Cameron used methamphetamine. She then acknowledged her relationship with him was a barrier to reunification but claimed that she only "just came to a full realization" that the Children were unsafe in her home while he was using drugs. She denied the conditions in the home presented any safety issues, however, and blamed her failure to completely engage in counseling, substance abuse testing, and parent aide services on transportation difficulties and staffing changes. She did acknowledge the Children were well-cared-for in their placements and would benefit from permanency.

¶17        On rebuttal, the DCS caseworker confirmed that Mother had some difficulties with transportation but, in response, DCS arranged for Mother to call if the cab did not arrive one hour before her counseling session so "they [c]ould make sure someone was dispatched immediately." Mother did not comply. And although Mother's initial counselor did retire during the course of the dependency proceedings, Mother had already stopped participating three months' before.

¶18        After taking the matter under advisement, the juvenile court found by clear and convincing evidence that severance was warranted: (1) as to all the Children because Mother was unable to discharge her parental responsibilities because of a chronic abuse of dangerous drugs and there were reasonable grounds to believe the condition would continue for a prolonged, indeterminate period, *see* Ariz. Rev. Stat. (A.R.S.) § 8-533(B)(3);[5] and (2) as to E.P., J.P., and M.P. because Mother had been unable to remedy the circumstances causing them to be in an out-of-home placement for longer than the statutory period, *see* A.R.S. § 8-533(B)(8)(c). The court also found severance to be in the Children's best interests and terminated Mother's parental rights accordingly. Mother timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1), and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

¶19        To terminate parental rights on the grounds of substance abuse, the juvenile court must find clear and convincing evidence that:

---

[5]        Absent material changes from the relevant date, we cite a statute's current version.

6

[(]1) parent has a history of chronic abuse of controlled substances or alcohol; [(]2) parent is unable to discharge parental responsibilities because of his chronic abuse of controlled substances or alcohol; and [(]3) there are reasonable grounds to believe that the condition will continue for a prolonged and indeterminate period.[6]

*Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377, ¶ 15 (App. 2010) (citing A.R.S. §§ 8-533(B)(3), -537; and *Kent K.*, 210 Ariz. at 280, ¶ 1). We will affirm a termination order "unless there is no reasonable evidence to support" the court's factual findings. *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 2 (App. 1998) (citing *Maricopa Cty. Juv. Action No. JS-4374*, 137 Ariz. 19, 21 (App. 1983), and *Maricopa Cty. Juv. Action No. JS-378*, 21 Ariz. App. 202, 204 (1974)).

**¶20** Mother does not dispute the juvenile court's finding that she has a history of chronic substance abuse, arguing only that DCS failed to prove that she was unable to discharge her parental responsibilities and that there are reasonable grounds to believe her substance abuse will continue for a prolonged, indeterminate period.

## I. Discharge of Parental Responsibilities

**¶21** Mother argues the record establishes that her past drug use "never was and is not now an impediment to her successful parenting." We disagree.

**¶22** The term "parental responsibilities" in A.R.S. § 8-533(B)(3) refers to "those duties or obligations which a parent has with regard to [her] child." *Raymond F.*, 224 Ariz. at 378, ¶ 20 (citations omitted). "The term is not intended to encompass any exclusive set of factors but rather to establish a standard which permits a trial judge flexibility in considering the unique circumstances of each termination case." *Id.* (quoting *Maricopa*

---

[6] To sever on this ground, the juvenile court must also find that reasonable efforts were made to reunify the family, or that such efforts would not restore the parent's ability to care for a child within a reasonable time. *See Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 (App. 2005) (citing *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 191-92, ¶¶ 31-34 (App. 1999)). Additionally, the court must find by a preponderance of the evidence that severance is in the child's best interests. Ariz. R.P. Juv. Ct. 66(C); *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005). Mother does not dispute the court's findings on these issues here.

*Cty. Juv. Action No. JS-5894*, 145 Ariz. 405, 408-09 (App. 1985)).  This Court has held, however, that a parent is incapable of discharging parental responsibilities if she cannot make appropriate decisions for a child, fails to protect the child from harm, or demonstrates an inability to provide a safe home for the child.  *Id.* at ¶¶ 21-22; *cf. JS-5894*, 145 Ariz. at 408 (finding that "establishment of a personal relationship with one's child is necessarily a parental responsibility" but that achievement alone was insufficient to defeat severance under A.R.S. § 8-533(B)(3)).

**¶23**        Here, the juvenile court found the Children remained at risk of harm in Mother's care because she refused to acknowledge her own substance abuse and "continues to live with and have a relationship with a man who is still a methamphetamine addict and who abuses her."  Mother was thus unable to discharge the basic parental responsibility of providing the Children a safe home as a result of her substance abuse.  Reasonable evidence supports these findings, and we find no error.

## II.    Likelihood of Future Substance Abuse

**¶24**        To support her argument that she is not at risk for continued substance abuse, Mother reiterates her excuses that the positive methamphetamine tests resulted from her use of cold medicine and that she used marijuana while pregnant upon the advice of her doctor.  But the juvenile court specifically rejected these excuses after finding Mother not credible, and we do not reweigh evidence on appeal.  As the trier of fact, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts."  *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004) (citing *Jesus M.*, 203 Ariz. at 280, ¶ 4).

**¶25**        Mother also argues her successful completion of standard outpatient and recovery maintenance programs "demonstrated her commitment to a sober lifestyle."  Although the juvenile court commended Mother for her participation in and completion of these services, it nonetheless found that, despite these services, Mother remains "in denial about her own drug abuse issues."  The court further found Mother had failed to complete parent aide services and had failed to fully comply with substance abuse testing and individual counseling, and "d[id] not find Mother's excuse for not fully participating in the services credible or persuasive."  Moreover, Mother missed her opportunity to affirmatively prove her sobriety by refusing to complete a hair follicle test in August 2017 and not testing consistently.

¶26 Mother's completion of substance abuse treatment — unaccompanied by confirmed sobriety, a successful display of parenting skills, or dissociation from known drug users — does not conclusively prove she has cured her substance abuse problems. *See Raymond F.*, 224 Ariz. at 378 ("Where the parent has been unable to rise above the addiction and experience sustained sobriety in a noncustodial setting, and establish the essential support system to maintain sobriety, there is little hope of success in parenting.") (quoting *In re N.F.*, 579 N.W.2d 338, 341 (Iowa App. 1998)); *Maricopa Cty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994) (affirming the termination of parental rights where "a parent substantially neglected to remedy her addiction during more than a year of out-of-home placement . . . even though the parent eventually beg[an] a successful recovery before the severance hearing"). Rather, the circumstances here, viewed in totality, support the juvenile court's conclusion that "Mother's lack of engagement in parenting skills sessions, substance abuse treatment and relationships with . . . active drug users . . . creates a reasonable likelihood that Mother's substance abuse will continue for a prolonged period of time." We find no error.[7]

## CONCLUSION

¶27 The juvenile court's order terminating Mother's parental rights to the Children is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[7] "If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds." *Jesus M.*, 203 Ariz. at 280, ¶ 3 (citing *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251, ¶ 27 (2000)). Accordingly, we do not address Mother's argument that DCS failed to prove severance was warranted based upon the length of time J.P., E.P., and M.P. were in out-of-home care.